Good morning, Your Honors. May it please the Court, Joseph Klapitz for the appellant Morning Star, and I'd like to reserve two minutes for rebuttal. Let me start with the focus letter, although I do want to note that it relates solely to the cross appeal, and so those are issues that are less important to my client, so I'm going to try to pivot. Could you begin by telling us what the current state of the situation is? Well, I don't even have an understanding. What is going on in the ground? The current situation was there was some post-judgment motions and pleadings that were filed. There was an effort to modify the injunction, which was denied in large part, but the time was slightly extended. But on the ground, have they already taken down this building, this second story? No. Do they have plans to take down the second story? Are they committed to taking down the second story? What's happening? So there have been plans that have been submitted. There's been claims that those plans don't satisfy the injunction. There's been a motion to hold in contempt, and then the trial judge put everything on hold pending the resolution of this appeal. Let me ask you vis-a-vis the focus order. So I'm looking at an opposition by Morning Start to the ex parte motion where it says, no one has ever asserted and the permanent injunction does not require removal of walls and ceiling. It only requires removal of the second story bedroom floor. Is that your current position? That is correct. So if we modified or if we asked if per the focus order, if we did something consistent with that, you would be fine with that? Well, our position is that the removal of the internal floor between the garage and the bedroom complies with part two of the injunction so long as the entire floor is removed and the garage is less than 18 feet. And I think that's already embodied in the definition of the second story improvements in paragraph one of part two. Whether it is or not, you've answered my question. Yes, but we don't dispute that if you remove the floor, it would qualify for that. So there would be something, some one thing that's under 18 feet. Correct. Got it. Right. And so then to move to the first, that really answers the second focus question. The first focus question is whether the district court, whether the ruling abuses its discretion. And our answer to that is no. Our position is it doesn't require them to do more than is necessary to bring the residents into compliance with the one story restriction. And if I was interpreting the court's ruling correctly, you were sort of identifying paragraph three and there's two restrictions in paragraph three. The first one says you can't basically fill up the area underneath the bedroom to create an artificially high foundation and turn the second story bedroom into a, quote, first story bedroom that way. And that was, you know, included in the judgment because there had been suggestions by Cantor Schoen, which you can see at pages 40 and 42 and 43 of the further excerpts of record, that that's what they were, you know, hoping to do. And the judge says, no, no, no, no, that would, you know, a 10 foot high foundation and then perching a bedroom on top of that would violate the story restriction. And then the second part was the provision in paragraph three that provides that the entire floor must be removed. And our position or the reason why that was included was that it was in anticipation of the attempt by Cantor Schoen subsequently to retain the second story improvements through a partial floor that they called a mezzanine. And our position is, and I'll state it very briefly so I can move on to what my client's most concerned about, is that the district court's ruling on that is consistent with California law. If you look at the Bieber case, 138 Cal App, page 360, it defines a mezzanine as, quote, a story with guests, I'm sorry, a story of diminished height introduced between two higher stories. So Bieber- Just to make sure, it's like your position is they couldn't just remove, you know, three quarters of the floor and put in a ladder and essentially have some kind of loft structure. They can't, you know, it just has to be one big empty space with no division, internal division, but they could otherwise leave the roof and exterior walls completely intact as long as they're not essentially gaming the system on the inside. Correct. That's our position. And then read the district court's order as consistent with that interpretation that the district court's order is not actually requiring them to remove the second higher exterior walls and roof and lower them so long as they can do that or- Or the 18-foot-tall garage if they want. Or the 18-foot-tall garage as long as there's really no way that they could put a bed, you know, somewhere in the middle of the nine feet high or raise the floor of the garage and turn it into a bedroom. Okay. They can hang it from the ceiling. Anyway. So, yeah, so we're all in agreement with that. So let me then switch to Morningstar's appeal and I want to really want to focus first on the restrictive covenant relating to the fences, barriers, and landscaping. And our position is the district court just misinterpreted this restrictive covenant and the grammar is dispositive here. The words fence, barrier, and landscaping are the subject of the sentence of the restrictive covenant. The verbs may be constructed, placed, or maintained. That's the predicate, the verbs of that sentence in the restrictive covenant. The two Romanets, which I refer to as the geographic restriction phrases, they're adverbial prepositional phrases. They modify the verbs by answering the question of where the construction may take place. Right? So now we turn to this last clause, which is really the focus of the interpretation. And that last which clause, which I've called the height restriction clause, that's an adjectival relative clause. This is the one that starts which is? That starts with which, right? Which is. Yes. Right? And that modifies the three subject nouns, right? So we're going back to this which clause is modifying the fencing, the barrier, or the landscaping. It's not purporting to modify the geographic restriction phrases that come before. It's going back to the front. And it may be a way that, I mean, I know this is going back to grammar school, but if you were to diagram the sentence, right? You would create your little line, right? And then you'd have your subject, fences, barrier, or landscaping. And then you'd have a little dotted line underneath that subject. And you'd have your adjectival relative clause, right? Immediately beneath that. That seems to be supported by the fact that the word on is there before one and two. So it's on one and on two. And then you're back to the clause modifying the fence, barrier, or landscaping. Correct. And so it's now going back to refer to the fences and barriers. And I think the grammar here is critical because the series qualifier canon is actually referred to as the rule of grammar. The entire purpose of this rule is to identify what words a clause or phrase modifies so we can aid in interpreting that. And that's the Stepnowski case that talks about that. And I really would encourage the court to look at the hypothetical rule 12-F that we put on page 13 of our third brief. Because I think it really illustrates the point. This restrictive covenant is kind of an unfamiliar context. But if we look at this procedural rule, it's sort of a more familiar context. It's the exact same structure as the restrictive covenant. If you said this hypothetical rule, a judgment, order, or decree striking an insufficient defense from a pleading may be issued by the court, colon, Roman at one, on its own, semi colon, or Roman at two, on motion made by a party before responding to the pleading, comma, which shall be immediately appealable. The ordinary reading of that, the natural reading of that hypothetical rule is that the immediately appealable clause applies to any judgment, order, or decree, regardless of whether it's issued by the court, on its own, or on a party's motion. I actually think this, your version may be clearer than the other one. Yeah, and so what I was trying to do is that this restrictive covenant is identical in its grammatical structure. And it should be given the identical construction as we would give that hypothetical rule. And I would note that this case is controlled by Pritchett, which addresses a very similarly worded statute. It has a lot of little extra prepositions. You know, my view is that all of this... Prepositional phrases. Well, no, the whole mode of analysis has somewhat gotten out of control. And where you began is correct. We went to grammar school, and we ought to be able to read the sentence. Right. And then what the court in Pritchett says is, that comma means everything. And it reminded me a little bit of that, I don't know if you've seen... I'm not even sure it does mean everything. I know that wouldn't matter if the comma wasn't there. Right. The absence of the comma. And the court then is... The absence of the comma might not matter either, given the structure of the sentence. Potentially. But I think in Pritchett, what the court is saying, and what Scalia and Garner cite Pritchett for, is this is how you apply this series qualifier canon. And I cited the court to the language in Stepnowski... What I objected to is the use of the word canon. It's English grammar. Correct. It's English grammar. And then I think even apart from the English grammar, there are three practical considerations why that weigh very strongly in favor of Morningstar's interpretation. The first of those is that the district court's interpretation creates this internal inconsistency within the restrictive covenant. Because you have this overlapping 750 square foot piece of the property that fits in both Romanets. Right. So under the district court's interpretation, Romanet 1 forbids offense, but then Romanet 2 allows offense. And how can you forbid and allow offense on the exact same property? That doesn't make sense. And then the second point here would be that the district court's interpretation would frustrate the expressly stated purpose of the restrictive covenants. By their own terms, the restrictive covenants are supposed to protect the privacy and the benefit of lot 17. And it's hard to see how removing this fence would protect anyone's privacy. As they say, good fences make good neighbors. And then the third point I would say is that the district court's interpretation... The thing I didn't understand about it is that it's an excess of two feet. Two feet isn't going to protect anybody's privacy very much. I'm sorry. I couldn't quite hear you. Two feet isn't going to protect anybody's privacy very much. It says... Oh, no, it's two feet. The properties are at different elevations. So it's two feet above the foundation of lot 16, which is at a slightly higher elevation. So it's not a two foot fence. It would be a fence that would go up no more than two feet above the foundation of the  And there are also city regulations. Correct. There might also be city regulations. And then the last point is just the absurd results. The district court's interpretation creates this demilitarized zone between the two properties. And that's not in anyone's benefit. It would also, if taken literally, require removing a retaining wall, which is also not in anybody's benefit. Let me just finally very briefly address the observation deck. Our position on this is when you turn a ceiling into a floor, you've got a second story. And that's especially true whereas here you're interpreting a restrictive covenant that's designed to protect privacy. And I think the district court mistakenly interpreted this restricted covenant because there's two key language points here that the district court misinterpreted. The first is that this restrictive covenant dealing with the observation deck, it uses the word improvement, right? Not building, not structure, right? An improvement can be something like a water slide or a basketball hoop that's affixed to the top of a first floor structure, right? You don't have to have a roof on an improvement. So it's a very broad term that's covered by this restrictive covenant. And the district court's interpretation saying, well, if you don't have a roof, you don't have another story, it misses the point of this very broad language. I thought the opposing argument to you was that greater than one story. Correct. Is different than higher than one story. Well, no, it's not quite that. The argument, and this is the second piece of language that the district court misinterpreted. The district court interpreted language that says no improvement greater than one story as if it meant no, as if it prohibited improvements less than two stories. And there's a difference between greater than one story and less than two stories, right? What the district court said is, if you don't have a roof, you don't have a second story. But that's not what it says. It doesn't say less than two stories. It says greater than one story. So any improvement that's on top of that story, the first story, is greater than one story. Literally any improvement? Well, we might have... I know they don't have these, well, like a satellite dish. We might fight about whether there's a de minimis or something like that. But that would violate the plain language. Your view, again, satellite dish. We're not fighting over a satellite dish. No, I understand that. But if they still had TV antennas, which I guess they don't. But talking about the language here, anything qualifies. I would hold to that interpretation. But I would say, to qualify that, that what we're talking about here is not a satellite dish. We're talking about an observation deck for a restrictive covenant that's designed to protect privacy, right? So the whole point of the story restriction is to prevent them from looking over into your yard. And their point is, this allows us to put a second story observation deck. And I think there's maybe this... I use this last kind of point to just sort of illustrate as just a way of illustrating it. A thought exercise, if you will, right? If your honors were to go out to the property, and you wanted to get to the observation deck, and you stepped into an elevator to get to the observation deck, would you push the button one, or would you push the button two, right? I think I'd probably push the button observation deck. Well, you'd have to push the button two, because the observation deck is above the first floor. What they've done is they've turned the ceiling of the first floor into a floor for another structure. And it's not a meaningless structure. 42-inch fences. I'm sure I know the answer to this, given the behavior in this case. But have you talked to our mediators? And is there any sense in having you talk to our mediators? Have the parties gone through our very able mediation program? I mean, I understand the case isn't exactly about money, but it is about private parties' interests. I have to be careful what I say. But what I will say is we did do a mediation. We've worked with the mediation program before, with the Ninth Circuit's mediation program. It was wonderful. We had a mediator's proposal. We thought we had a resolution, and then we didn't. And so that's why we're here. All right. Thank you, counsel. Good morning, Your Honors. Jeremy Rosen of Horvitz & Levy for the Cantor-Schoen Family Trust. I don't know if I'm entitled to a short rebuttal, given that we have our appeal as well. If I could get two minutes for that, I'd appreciate it. If not, I understand. I'd like to just— Two minutes covers both, but you can talk about whatever you want. Thank you, Your Honor. I'd like to just start with the mediation question. It's, as my friend pointed out, there was an earlier mediation. It did not resolve. I can represent that we would like the opportunity to have another shot at going to the mediation program. Plus, you may be informed by the arguments. Yes. I guess what I would say, and my colleagues may differ, but if both parties would like another shot at this, they should inform us. Very well. I will talk to counsel after the argument, and if we can reach an agreement to mediate, we will certainly let the panel know and go to the good offices of the Ninth Circuit Mediation Program. I'd like to start with one of the last comments my friend on the other side made, where he referred to a, quote, second story observation deck, unquote. And this is consistent with page 45 of their opening brief on the merits, where they make the point, quote, that the ordinary meaning of a story does not require that a structure have both a floor and a ceiling. And this is an important argument that they make because it contradicts, of course, what the district court found here, which is that the meaning of a story has a fixed and clear and unambiguous meaning of a structure that has both a floor and a ceiling. Well, yes, but we're talking about that argument issue now. The statute doesn't say anything about stories with regard to what can be built. It says no improvements of any kind. So it doesn't matter whether the deck is a story. It matters whether it's an improvement of any kind that otherwise comes within the provision. Well, it has to be greater than one story, which I think implicit in that would be another story, unless you get... Why isn't it implicit in that? Well, then you get to, I think... Higher than one story. Well, except it doesn't say higher. And I think then you would get to an absurd reading, as Judge Bennett pointed out, that it would bar satellite dish. It would bar, as we point out in our briefings, the chimney. Well, that's not so absurd. I mean, it may be that this is what they meant, or it may be negotiable, but what's absurd about it? Well, I think, though, that this is now... Your question, I think, is getting into that it is not clear on its face exactly what it means, and especially in light of the California law, as evidenced by their Supreme Court's decision in the Thomas Dreyage case, where the California Supreme Court, admittedly at odds with how federal courts and other states look to contract interpretation, made it very clear that in California, they do not believe that words have fixed meaning, and that extrinsic evidence must always be introduced to be able to determine whether there's some specialized or unique meaning that the parties or the community give to... Of what? Of the story? The question of what's a story? Yes. But that's not the question here. Because we know that the restriction doesn't only apply to additional stories. It applies to no improvements of any kind. So the key language is greater than. It's not story. Well, except if, as the extrinsic evidence showed in this case, that the district court did not consider, because it relied solely on the California Court of Appeal King decision, that one story means just 18 feet. So if that is the understanding of the community, of a specialized meaning for story, then anything under 18 feet is just one story. So necessarily, the bedroom cannot be an improvement greater than one story. And that's where the ambiguity comes in. And... Are we talking about the bedroom or the deck? Well, both. Talking about the deck. Okay. Well, for the deck, the district court actually did the proper analysis and actually considered the extrinsic evidence. If you look at the district court's order on the rooftop deck, the court, this is at... Let me see what page... Well, for the rooftop deck, the district court at page ER34 considered the extrinsic evidence of the International Building Code, which has been adopted in California, which finds that enclosures that are less than 48 inches above the surface do not count as an additional story. And that's consistent with the Malibu Code, which was testified to by the Malibu City Planner in this case, where they do not consider a rooftop deck to be a story. And so it is therefore not greater than one story to have a rooftop deck. And so here, I think the district court did properly consider the extrinsic evidence to interpret what was permitted and what was not permitted. Whereas for the fundamental question on the bedroom, the district court just accepted the King decision and found that there was clear and unambiguous meaning to a story, even though the King decision made very clear that in that particular case from 1961, which of course predates the Thomas Dreyage decision and therefore may not be good law to begin with, but in King, the Court of Appeals said none of the parties are ascribing any special meaning to story, so we just default to what we think is the clear and unambiguous meaning of the story. Whereas here, there was substantial extrinsic evidence provided that within Malibu, in particular within this particular subdivision, one story is a term of art, meaning 18 feet. But this particular clause has both the 18 feet and the story greater than one story, so doesn't the second become superfluous if you read it that way? No, because as we point out in our briefs, the 18 feet is above, it's 18 feet above the grade of lot 16, whereas the greater than one story is in any event having nothing to do with the grade. So depending, the grades are at different levels, so what this is saying is that you can either be, depending on the property's slope, so you can be no more than 18 feet above the grade, but also even if you're below the grade, you can only be one story, which is also understood to be 18 feet. So depending on where you are, and these provisions were put in before anyone knew where homes or anything were going to be built on the respective properties, so they are two separate provisions that could lead to different ultimate... I want to address the landscaping provision and also the question that was in the focus order. Yes, so in terms of the focus letter, given this circuit's general requirements that an injunction be no broader than necessary, I would submit that the only thing that should be in the injunction is basically the first two lines of the injunction. If you're looking at page four of the excerpt to record, is that where it says, the parties are permanently enjoined and shall immediately cease any and all occupancy, habitation, and use of any and all improvements greater than one story on lot 16. That is all that Morningstar is permitted. They are allowed to the extent that... Oh, you don't think there's a permission to direct what exactly has to be changed? No, because then you run into sort of the California law, which talks about how you have to balance the benefit and burdens of restrictions. Oh, but that's... Okay, I understand your argument. And I would just submit that there are many different ways that one could, you know, to the extent that the district court is correct that one story means a floor and a ceiling, there are many ways that one can comply with the one story definition that the district court had and Morningstar has no right to determine how their neighbor complies with the covenant, just like they would... A court in equity has the right to take into consideration and furnish in awarding equitable relief what the parties have done up to the point of the injunction, right? Well, the court certainly has the power to determine that the current structure violates the covenant and has a right, if there's a violation, to order compliance and has the right to oversee the compliance efforts. But I don't believe... I think it goes further than necessary to micromanage how the compliance can be done because there can be many ways to... I'm not sure, given the history of this, I would describe the district court's order putting aside the issue in the focus order as micromanaging as opposed to wanting to see that the district court has a requirement of where we are at A and where we need to go to B and doing, in the district court's view, the most equitable thing to get there. Well, I guess I would just point out there's a disparity and part of it was is that the district court asked the winning side for each part of the injunction to prepare the draft injunction and maybe we're faulted for being fairer in how we presented it, but the injunction against Morningstar, I think, is more appropriate. It just simply says there needs to be compliance with the provision and the requirement is to, within 60 days, submit a proposal to the city and then to make every effort to get that proposal accepted, whereas... Is there currently, from your client, a pending provision, a pending proposal with the city? Yes, and that was, as had been in some of the post, in some of the motion practice that counsel alluded to, there had to be monthly reports to the district court and my clients had made a proposal to the city. I believe it has still not been... And that proposal is to take down the second story entirely, is that right? I believe it was, because that was the requirement that the district court gave. There are multiple other ways that the injunction... In other words, you're still challenging the injunction and the proposal was not a settlement proposal, but simply a compliance with the injunction. Yes. So it doesn't matter what it is. Correct. It would change it if the injunction were lifted. Well, if the injunction were lifted or modified, and I do believe the injunction should be modified... Well, I think the entire injunction should be reversed because for a new trial where the district court considers the extrinsic evidence, or at least may not need to be a new trial, just a new hearing. The extrinsic, it was a bench trial, the extrinsic evidence is out there. I think Judge Berzon had also asked you to address your view of the Section 2 grammar issue. Right, yes, please. Oh, yes. So on the grammar issue, again, I think here, the cases that they cite regarding sort of the series... Forget cases, let's just read the language, okay? From scratch. It says that it has to be, it may be constructed placed or maintained on 1 and 2, right? So now we're done with the on. And then it says, which is, which has to be referring back to the defense barrier or landscaping. What else could it be referring to? Well, I think that the critical difference here, and this is what the district court seized on, is that unlike every other case involving sort of this grammatical interpretation, which does not involve either the two Romanets or, and more importantly, the semicolon. But the two Romanets are about a sub-issue, which is where, all right? And that's clear, and the word on makes clear that that's what it is, all right? And it's now over with, you know where, on 1 or 2. Now we're back to what? Which is? Well, except which is, what does that refer to? And I think where you have two parts separated by a semicolon, generally the semicolon, my recollection from grammar school is that a semicolon sort of separates the two things on either side of the semicolon. So if there is a clause that is modifying something that occurs on the other side of the semicolon, it modifies everything up and to, going back to the semicolon. It doesn't jump across the semicolon to get to the other side. Your view is which is doesn't go back pre-semicolon.  Which is is only relevant to post-semicolon. So then what is which is modifying? An area? What's the referent to which is? On your theory, it has to be area. That doesn't make any sense. It's incoherent. If I understand your argument correctly, you're saying there's absolutely no fence barrier or landscaping permitted in area one. One, correct. And then for area two, there can be a fence barrier or landscaping so long as it's not, so long as it satisfies the which is clause. Correct. And that's why they have two separate. That's how the district court read this, right? There's the alternate reading, which is no fence or barrier in either one or two that satisfy as long, unless it satisfies the which is clause. Let's say semicolons and commas are ambiguous here. Why doesn't the general rule that in the face of ambiguity, we would favor free use of property and let them build, keep the ficus trees alive? Well, a couple of things. One is the, I think you have to review for clear error, I think, of the district court's interpretation. And I think the district court interpreted, interpretation makes. The clear error contract interpretation is usually a legal question. I think that's a fair point. But I think that the district court in looking at it and in hearing all the testimony regarding sort of the purpose of the fencing and the like, I think made the reasonable grammatical interpretation. Also, and I see my time is up, but just briefly, and I forget which of your honors made this point, but I think it's a very important one. Even under the Morningstar's interpretation, it's a very de minimis. It would be a very de minimis hedge or fence. It's not just the fence. It's these very tall trees that were planted. All right, well, that's fine. And maybe then we'll have to cut something down, but I still want to know what, which is refers to under your theory. I think it is modifying that the no fence barrier landscaping in the area. In area two. In area two. It described in area two. Yes, not in area one. All right, thank you, counsel. Thank you. Your Honor, I do want to correct one, I think, inadvertent misstatement of the record. My understanding is that. I'm sorry, was there no time left? All right, we'll give you a minute. One minute, okay. I do want to correct a misstatement of the record. I do not believe the Cantor-Schones have submitted any proposal to date that removes the entire internal floor in the garage all by itself. Our understanding is that that only requires getting a demolition permit, which is fairly easy to get. And then if I just might make the point, this is responding to your Honor's question. There's a lot of CC&Rs that prohibit satellite dishes. It's not an uncommon provision. It may seem harsh, but it happens. And I think here, the key language here is greater than one story. You don't obviously have to address the satellite dish issue because I think the observation deck has 42-inch walls all around it. It has a bench, a seating bench that's a fixture built into the ceiling. So I think you can sort of sidestep that. But the idea that it's somehow, oh, that's really harsh, it has to be wrong. There are common restrictions that do that. So if they had just built a one-story house from the get-go, they couldn't just go put some chairs on their roof and sit up there? Well, they certainly couldn't do it as an improvement, right? An improvement is a fence with railing, a seated bench that's affixed into- From context, it seems like they're talking about improvement could be the whole house, right? Oh, no, no. An improvement is a broader term, right? An improvement could include a lot of things. That's why you're relying on Section 3 to just say even the whole structure is violative if it has two stories. A structure is clearly an improvement, right? But there are things short of an entire structure and short of an entire floor that constitute an improvement. All right, we thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for the day. Thank you. Thank you. All rise.  This court for this session stands adjourned. This court for this session stands adjourned.
judges: BERZON, BENNETT, SUNG